WILLIAM A. BROWNE & another *vs.* SULLIVAN NILES
& others.

Suffolk.    January 23, 1896. — February 26, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Landlord and Tenant — Lease — Injunction — Nuisance — Law and Equity.*

Where the lessee of a building cuts apertures in the floors, removing the cross timbers and flooring and covering the apertures by trap doors with hinges, and using the apertures to give passage to articles raised by a tackle and fall, even if these acts constitute a violation of the terms of the lease, the lessor is not entitled to have the lessee enjoined from using or continuing the openings, no substantial injury being shown, but he will be left to his legal remedies.

If the lease of a building is made with full knowledge of the lessee's business, which was then being carried on in the same premises, and of the uses to which the premises would continue to be put, and the actual use of the premises is no worse than is necessarily incident to the business which was contemplated when the lease was made, but the effects of the business are to create a nuisance on the premises, the lessor is not entitled to have the lessee enjoined from continuing such nuisance, if the effect of the injunction will be either to compel the lessee to stop the business or to make expensive alterations in the premises, but the lessor will be left to his legal remedies.

BILL IN EQUITY, filed March 16, 1895, to enforce certain covenants in a lease of premises in Boston for the term of five years from April 1, 1893, made by the plaintiffs to the defendants. Hearing before *Holmes* J., who reported the case for the consideration of the full court, in substance as follows.

The covenants in question are that the defendants will not "make nor allow to be made any unlawful, improper, or offensive use" of the premises, " nor any alterations or additions during the term aforesaid without the consent of the lessors," and that they " will be responsible and will pay all damages and charges to the city government or others for any nuisance made or suffered on the premises during said term."

It appeared that the defendants, without the plaintiffs' consent, have caused or suffered apertures to be cut in the second and third floors of the leased building, measuring about three and a half by nine feet. These apertures are closed by trap doors on hinges, and, when the doors are raised, are used for a tackle and fall. These are the only alterations complained of. In

making the apertures three cross timbers were cut, but no main beams, and one similar timber was moved a few inches. It would be impracticable to restore these timbers, and means of strengthening the floors have been taken which leave them as strong as ever. The only remedy which equity could furnish would be to order the hinges to be taken off the trap doors and the doors to be fastened down. Braces could be put under these doors, but, on the evidence, there did not appear to be any need of them. The judge did not find that the plaintiffs were precluded by laches or acquiescence from insisting on their rights, but, subject to the foregoing facts, found that no sufficient case was made out for equitable relief in this respect.

The judge did not find that any offensive use was made of the premises of which the plaintiffs could complain. The place is used, as it has been for more than twenty years, for a pork business, not pork-packing in the technical sense. Sausages are made in an upper story. A furniture business is carried on in the second and third stories, and pork is pickled in the basement. The ground floor also is used for provisions. The plaintiffs became the owners of the premises in 1893, but made the present lease with full knowledge of the defendants' business, and of the uses to which the premises would continue to be put by them. The defendants had been lessees previously. The judge did not find that the use was any worse than is necessarily incident to the business which was contemplated and expected when the lease was made, and denied an injunction so far as this covenant was concerned.

The most important question arose on the condition of the basement or cellar, and as to the alleged business the judge inspected the cellar. It has a wooden floor, which can be removed only by tearing it up, and under it, as is shown by thrusting a stick through the crevices, is a layer of wet mud, with the bad smell of dock mud. This is on a hard bottom, which feels like concrete, although the weight of the evidence was that there was no concrete there. The evidence for the plaintiffs tended to show that this mud, and the smell which marked it, were due to the washings from the defendants' business and the pouring out of used up brine. On the other hand, it appeared that the tide comes up through the soil in that neighborhood, and that

it flows in under the wooden floor above described. The judge was not satisfied that the mud or the smell would be got rid of by the cessation of the defendants' business. So far as it is due to or helped by that, the only remedy except stopping the business would be a reconstruction of the wooden floor, and to prevent the whole trouble it would be necessary to lay a concrete floor underneath, and to concrete the sides to a certain height so as to keep out the tide. On the testimony of officers of the board of health, the judge found that the present condition is liable at least to create a nuisance. For the purpose of this report, in order to test the correctness of the rulings of law and to decide what decree is proper, it is to be assumed that a nuisance exists on the premises. Proceedings have been begun by the board of health looking to an abatement. But as yet it does not appear how far the expense or cost will be thrown on the land and how far it will be borne by the public, as it may be held that the only or main cause of trouble is the tide. On these facts, the judge was of opinion that no equitable relief should be granted, and dismissed the bill; such decree to be entered as equity may require.

*F. Rackemann,* (*F. V. Balch* with him,) for the plaintiffs, cited to the effect that it was not necessary to show damages, *Melrose* v. *Cutter,* 159 Mass. 461.

*S. J. Elder & W. C. Wait,* for the defendants.

BARKER, J. 1. In two floors of the leased building the defendants have cut apertures three and a half feet wide by nine feet long, removing the cross timbers and flooring, and covering the apertures by trap doors with hinges, and using the apertures to give passage to articles raised and lowered by a tackle and fall. Whether the making of the apertures was an alteration of the building within the meaning of the lease, we do not consider, as a majority of the court are of opinion that, upon the facts found, the plaintiffs are not entitled to have the defendants enjoined from using or continuing the openings. Such means of strengthening the floors have been taken as to leave them as strong as ever. The making of the apertures is not shown to have increased the fire risk or the cost of insurance, or to have in any way lessened the value of the building, or its safety, or to have injured the plaintiffs.

If the making of the apertures was a violation of the terms of the lease, the plaintiffs have not only their action for breach of contract, but their right to terminate the defendants' estate. We are of opinion that, if there has been a violation of the terms of the lease by making the apertures, the plaintiffs should be left to their other remedies, and should not be given an injunction forbidding the defendants to further continue the openings. No substantial injury is shown. *Atkins* v. *Chilson*, 7 Met. 398, 405.

2. The report requires us to assume that a nuisance exists upon the premises. Assuming further in favor of the plaintiffs that the nuisance is due, not to the effects of the tide, but to the effects of the business carried on by the defendants, we are of opinion that the plaintiffs are not entitled to have the defendants enjoined from permitting or continuing a nuisance upon the premises. The plaintiffs made the lease with full knowledge of the defendants' business, which was then being carried on on the same premises, and with full knowledge of the uses to which the premises would continue to be put, and the actual use of the premises is found to be no worse than is necessarily incident to the business which was contemplated and expected when the lease was made. If the business is carried on, the continuation of the nuisance can only be prevented by the reconstruction of the basement floor, laying a concrete floor underneath, and concreting the sides to a height to keep out the tide. Thus the effect of an injunction would be to compel the defendants either to stop the business to do which the plaintiffs knew the building was hired, or to make important and expensive alterations in the premises. Without the aid of an injunction the plaintiffs may terminate the lease if the alleged nuisance is a breach of it. There is no express covenant in terms that the defendants will not suffer or permit a nuisance upon the premises. There is a covenant that they will not make nor allow to be made any unlawful, improper, or offensive use thereof. But this ought not to entitle the plaintiffs to stop the use of the building for the very business in which both parties expected it to be used wher the lease was made. The further covenant that the lessees shall be responsible for and pay all damages and charges for any nuisance made or suffered on the premises during the term gives a further remedy to which the plaintiffs may resort, if such dam-

ages or charges shall arise.   We are all of opinion that an injunction forbidding, under the circumstances shown in the report, the defendants from permitting, suffering, or continuing any nuisance upon the premises would work inequitably upon the defendants, and that it is not necessary to save the plaintiffs from harm or damage.    *Decree dismissing the bill affirmed.*