UNIOLA REAL ESTATE CO.

        VS                                              No. 8151

LEVY MATTRESS CO., INC.

May 22d 1922.

UNIOLA REAL ESTATE CO.

      VS                                     No. 8151

LEVY MATTRESS CO., INC.

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff seeks to recover from the defendant, his lessee, the amount of an increased premium of fire insurance which he had to pay owing to the business carried on by the defendant in the leased premises.

The plaintiff alleged that he leased to the defendant the premises No. 918-22 St. Louis Street for the price of $75 per month according to a written lease annexed; that without petitioner's consent the defendant put certain materials in said premises which have increased the rate of insurance; that the building had been rated when used for the manufacture of cork mattresses by former occupants at $1.35 per thousand, and that the rate was raised by the Insurance Company to $2.431 per thousand by reason of the materials put into the premises by the defendant, making a difference of $101.58 which petitioner paid; that the act of the defendant in bringing into the building such materials was a violation of the lease, causing petitioner damage to the amount of $101.58 which is justly due by defendant.

The defendant denied any indebtedness. It averred that at the time the lease was made it was conducting a mattress factory at No. 1117 Poeyfarre Street, as was well known by plaintiff's agent, and that it leased the building No.918-22 St. Louis Street to

"conduct therein a mattress factory similar to the one which it was conducting on Poeyfarre Street; that the obligation assumed by it not to put anything in the leased premises which would increase the rate of insurance clearly

184

meant not to put anything therein other than those things which are necessary for use in a well conducted mattress factory which would increase the rate of insurance, and that it has not at any time placed in said building anything of any kind, nature or description whatsoever other than is used by mattress manufacturers in the conduct of their business";

it further averred that it had

*purpose*

"not used the building at any time for any other than that for which it was leased".

There was judgment for defendant, and plaintiff has appealed.

The parts of the lease necessary to the decision of this case are as follows:

"Emilien Perrin Agt. Uniola Real Estate Co. of New Orleans, La., hereby leases to "Levy Mattress Company, Inc." the premises known as No. 918-22 St. Louis Street x x x  The lessee is further obligated and bound x x x x to put nothing therein which would forfeit the insurance or increase the rate thereof; x x x not use the premises for any other purpose than herein contemplated x x x should lessee in any way violate any condition of this lease, lessor hereby expressly reserves the right of cancelling said lease without putting lessee in default x x x . Lessee is granted the privilege of using the said building from August 1st, 1918 to September 30th, 1918 free of rent, and in return will allow lessor the use of lessee's present building 1117 Poeyfarre Street for the period named provided the owner will give permission to sublease the same; any rental received for lessee's premises 1117 Poeyfarre Street to be the property of lessor, it being understood that permission for sublease is obtained from the owner of said building".

The testimony establishes the following facts:

Prior to the date of the lease involved in this case the defendant had been engaged in the manufacture of mattresses at No.1117 Poeyfarre Street to the knowledge of the plaintiff; Leon Jacobs, real estate agent, procured the defendant as the lessee for the plaintiff; the nature of the business carried on by defendant was fully known to him; Emeline Perrin, the President of the plaintiff company called on Mr. Levy with Mr. Jacobs at No. 1117 Poeyfarre Street on the day they agreed to close the lease, but he did not inspect the premises or the factory; he thought it was felt; he had no idea it was felt or moss.

Mr. Jacobs says:

"The remark came up by Mr. Sam Levy as to the amount of mattresses they were making; we were both surprised at the amount, and Mr. Sam Levy offered to take us through, but we were stopped by the fact that they were just about to clean up and this was about their closing time in the evening; it must have been about 5 o'clock".

After the lease, the defendant carried on, at 918 St.Louis Street, exactly the same business that he had conducted on Poeyfarre Street-; no changes at all were made.

Mr. Perrin and Mr. Jacobs both testify that they leased the St. Louis property to the defendant for the purpose of maintaining a mattress manufactory; but Perrin was not aware of the material employed to make the mattresses.

The building on St. Louis Street had previously been occupied by the "Crescent Cork Works"; they subleased it for the manufacture of cork mattresses from the shavings of corks. It never occured to Mr. Perrin at any time that the Levy Mattress Co. was going to operate a cork works; he

"knew better than that".

There is no evidence that the defendant was aware of the business which had been carried on in the building on St.Louis Street previous to their occupancy of it.

It thus appears conclusively by the testimony of the president of defendant company, and of their agent who procured the defendant as tenant, that they leased the St. Louis property to be used as a "mattress factory"; not restricted to mattresses made of cork exclusively, but for all kinds of mattresses made of all kinds of materials genarally of which mattress are made without any restriction as to material, whether that material was cork, corn shucks, wool, cotton, hair, felt, excelsior, or any other material. If the lessor had intended to restrict the ledsee to the manufacture of mattresses to be made of cork, he should have so stated. Although it might be that the plaintiff knew that some mattresses were made of cork from the fact that his former tenant had manufactured such mattresses, there is no testimony that defendant had that knowledge or had ever made mattresses of cork shavings. *2 N. E. 363. 3 N. E. 879*

The lessor, like the vendor, must explain himself clearly respecting the extent of his obligations; any **obscure** or ambiguous clause is construed against him. C. C. 2474 (2449) Rosenthal vs Prustman, No. 8392 Ct. App. *30 La 253. 112 La 39 / Domat p 209 §10= 105 La 294 (303)*

"There is a familiar canon of construction that all contracts, including leases of every description, shall be most strongly construed against the grantor, and that if there be any doubt or uncertainty as to the meaning of any such lease it shall be construed most strongly in favor of the grantee". 24 Cyc 915 (c); C. C. 1957 (1952). C. C. 1858 (1953) "But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted whether he be obligor or obligee".

Any obscure or ambiguous clause is construed against the

lessor. Rosenthal vs Prutsman, No. 8392 Ct. App.

"Forfeiture of contracts or leases are not encouraged
by the Courts, and will be enforced only when the right
thereto is clear beyond a doubt both of fact and of law".
Scibetta vs Marciante, No. 7974 Ct. App.

In the case of Mc Neil vs Dr. J. H. Knapp, 18 A. 701,
there was nothing in the lease which indicated that the property
leased was to be used for any purpose, certainly not for a millin-
ery store; on the contrary, the defendant was a dentist and the
presumption would have been that the property was to be used for
his professional purposes. But the "dentist" sublet a part of the
property to Mrs. Babett who moved into the house a stock of mil-
linery goods. It was not in the contemplation of the parties that
such use was to be made of the property, and inasmuch as such
use caused the cancellation of the fire insurance policy, it con-
stituted a violation of the lease.

But the decision would have been otherwise had the plain-
tiff leased a store to the "Babett Millinery Co." with the know-
ledge that at the moment of signing the lease the Babett Millinery
Co. was then engaged in running a millinery store, in another
building.

Article C. C. 2711 (2681) is of assistance in deciding
this case. It reads as follows:

"If the lessee makes another use of the thing than that
for which it was intended, and if any loss is thereby sus-
tained by the lessor, the latter may obtain the dissolu-
tion of the lease".

But we have come to the conclusion that the defendant com-
mitted no violation of the lease by making mattresses with excel-
sior, and that therefore the plaintiff is without cause of action
on that ground. The burden of proof was upon the plaintiff to
show a clear case of violation of the lease. The plaintiff places

188

his whole reliance upon the case of King vs Murphy Varnish Co. 74 N. E. 290 (188 Mass. 66). The lease in that case provided that

"No act or thing shall be done upon the said premises which may make void or voidable any insurance of said premises or building against fire, or may render any increased or extra premium payable for such insurance".

The plaintiff sued the defendant in damages because while

"engaged in the varnish business, it put into the premises certain tanks for the storage of varnish by reason of which the insurance rates were increased. There was judgment for plaintiff.

But in that case the opinion shows that the lessor was ignorant of the uses to which the property was to be put, as is evidenced the the following language: The Court said:

"But it is to be observed, if material, that though the plaintiff knew that the defendant was engaged in the varnish business, there is nothing to show that either he or his son, through whom the negotiations for the lease were carried on, knew the extent of the defendant's business, or how it was conducted, or that the defendant stored varnish in large tanks on the premises occupied by it. To give the covenant therefore, the construction contended for by the defendant, would be going beyond what the lessor could be held to have reasonably contemplated. But we think that the covenant cannot properly be construed, as the defendant contends. There is no provision in the lease, express or implied, as to the nature of the business to be carried on upon the premises."

As a confirmation of our interpretation of that opinion, we reproduce a case quoted in that very case decided by the same Court a few years before. In Brown vs Miles, 43 N. E. 90 (Mass.) the plaintiff sought to enjoin the defendant from causing a nui-

189

sance on the leased premises. The Court said:

> "Assuming further in favor of the plaintiff, that the
> nuisance is due, not to the effects of the tide, but to
> the effects of the business carried on by the defendants,
> we are of opinion that the plaintiffs are not entitled to
> have the defendants enjoined from permitting or continu-
> ing a nuisance upon the premises. The plaintiffs made
> the lease with full knowledge of the defendant's business,
> which was then being carried on in the same premises, and
> with full knowledge of the uses to which the premises
> would continue to be put, and the actual use of the pre-
> mises is found to be no worse than is necessarily inci-
> dent to the business which was contemplated and expected
> when the lease was made x x x There is a covenant that
> they will not make, nor allow to be made, any unlawful,
> improper, or offensive use thereof. But this ought not
> to entitle the plaintiffs to stop the use of the build-
> ing for the very business in which both parties expected
> it to be used when the lease was made".

This opinion is in accord with our views of the law gov-
erning the case under consideration.

But the plaintiff contends that independently of the ques-
tion of violation of the lease, he is entitled to recover the in-
creased amount of the premium by virtue of the clause which pro-
vides that the lessee shall

> "put nothing therein (in the leased premises) which would
> forfeit the insurance or increase the rate thereof".

But we think that this clause does not amount to an assumption of
payment by the defendant of the increased premium of insurance
resulting from the presence in the building of the material used
by the defendant in making mattresses. It means that the lessee
shall not put into the building any other thing or material than
that which was necessary for the uses for which the property was

leased, within the contemplation of both parties; and that if he did so, he would have to pay the increased premium.  Any other construction would obligate a lessee to pay, not only the rent for which he bound himself, but also the increased premium of insurance which his use of the premises called for, but which he did not assume  in express terms.  There is no evidence that the defendant put into the building any other material than those used by mattress manufacturers.

"He who claims the execution of an obligation must prove it".  C. C. 2232 (2229).

In the absence of an express promise to pay the increased premium defendant cannot be held to pay it.

It is therefore ordered that the judgment appealed from be affirmed at the costs of plaintiff in both Courts.

Judgment affirmed.

May  22d  1922.